IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ALI P. MARTIN,

                              Plaintiff,

              v.                              Civil Action No.
                                             9:03-CV-0712 (LEK/DEP)

TED HOWARD, *et al.,*

                              Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

ALI P. MARTIN, *Pro Se*

FOR DEFENDANT:

HON. ANDREW M. CUOMO                  SENTA B. SIUDA, ESQ.
Attorney General of                   Assistant Attorney General
the State of New York
615 Erie Blvd., Suite 102
Syracuse, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

       Plaintiff Ali P. Martin, a former New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights.  In his complaint, as amended, plaintiff alleges that he was physically and sexually assaulted by corrections workers employed at the prison facility in which he was housed at the relevant times, and that neither the facility Superintendent nor the Commissioner of the New York State Department of Correctional Services (the "DOCS") took appropriate measures to train staff and to protect him from abuse.  As relief, plaintiff seeks recovery of damages of at least three hundred thousand dollars.

Currently pending before the court is a motion by the defendants who have thus far appeared in the action, seeking the entry of summary judgment dismissing plaintiff's complaint.  In their motion, defendants argue that neither the DOCS Commissioner nor the Superintendent of the facility at which plaintiff was housed when the assault occurred were personally involved in the civil rights deprivations alleged in his complaint, and that there is therefore no basis for holding them legally accountable. Additionally, all of the defendants assert that plaintiff's claims are procedurally barred, based upon his apparent failure to exhaust available administrative remedies before commencing suit.

Because the record definitely establishes, without contradiction,

plaintiff's failure to exhaust remedies before commencing suit, and disclose no basis to excuse the requirement of exhaustion, I recommend that defendants' motion be granted and plaintiff's complaint be dismissed as against them, finding it therefore unnecessary to address the issue of personal involvement.  I further recommend dismissal of plaintiff's complaint as against the two defendants who, despite being named in plaintiff's complaint, have neither been served nor appeared in the action.

I.      BACKGROUND

At the times relevant to his claims plaintiff was a prison inmate entrusted to the custody of the DOCS, and designated to the Upstate Correctional Facility ("Upstate").  Amended Complaint (Dkt. No. 25) ¶ 3. Upstate, which is located in Malone, New York, houses inmates who have been assigned to special housing unit ("SHU") cells for various reasons including, principally, as punishment for infractions of prison rules.  *See Samuels v. Selsky*, No. 01 CIV. 8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002).

In early March of 2003, an incident occurred as a result of which plaintiff suffered physical injury requiring medical attention.  Amended Complaint (Dkt. No. 25) ¶¶ 15-29; Defendants' Exhibits (Dkt. No. 37-4)

3

Exh. B.  Although determination of the instant motion is not dependent upon resolution of the discrepancies between the versions of the relevant events given by the plaintiff in his complaint, and the defendants in their moving papers, those recitations are markedly different.

In his complaint, plaintiff claims that he was removed by prison officials from his cell on March 6, 2003 and taken to the prison hospital, where he suffered a late night assault at the hands of several corrections workers, including defendants Liberty, White, and Howard.  Amended Complaint (Dkt. No. 25) ¶ 15-20.  According to Martin, the incident was preceded by his reports to prison officials, as early as January of 2003, to the effect that he feared for his safety as a result of conflicts which he was having with corrections officers at Upstate, including in particular defendants Liberty, White, Howard and Caran.  *Id.*  ¶¶ 8-14.  After Martin was left alone in a room overnight, corrections officers returned in the morning, and continued their assault, attempting to carve a racial epithet in his chest with a double-edged pocket knife, and sexually abusing him.[1]

---

[1]     Plaintiff's report that prison guards had attempted to etch a racial epithet into his body was investigated by prison officials, ultimately leading them to conclude that the scratches which were apparent on the plaintiff's chest were self-inflicted. Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 37-3) ¶ 4; *see also* Thompson Aff. (Dkt. No. 37-2) Exh. E.

*Id.* ¶¶ 21-28.  During the course of the incident plaintiff was stabbed in the thumb by defendant Liberty, necessitating medical attention which included stitching.  *Id.* ¶ 26.

According to the defendants, the events which occurred on the evening of March 6-7, 2003 were precipitated by plaintiff's refusal to attend a scheduled medical appointment and his physical resistence to their efforts to conduct a frisk search.[2]  Defendants' Local Rule 7.1(a)(3) (Dkt. No. 37-3) Statement ¶¶ 2, 3.  Following the incident, during which plaintiff struggled and bit one of the corrections officers involved, he was subdued and stripped frisked and was later treated by medical staff for abrasions to the back, neck, face and stomach.  *Id.* ¶ 2.  As a result of his actions plaintiff was issued a misbehavior report by Corrections Officer T. Howard, charging him with several disciplinary infractions including failure to obey a direct order (Rule 106.10), assault on staff (Rule 100.11), violent conduct (Rule 104.11), physical interference (Rule 107.10), possession of contraband (Rule 113.23), and smuggling (Rule 114.10).  *Id.* ¶ 3; *see also* Thompson Aff. (Dkt. No. 37-2) Exh. D.  Following a Tier III disciplinary

---

[2]      As will be seen, the contents of defendants' Local Rule 7.1(a)(3) Statement, to which plaintiff has not responded, have been accepted as true for purposes of the pending motion.  *See* pp. 12-14, *post*.

hearing held on March 21, 2003, in plaintiff's absence, based upon his refusal to attend, Martin was found guilty on all counts, resulting in a imposition of a restricted diet for a period of twenty-one days.[3],[4] Defendants Local Rule 7.1(a)(3) Statement (Dkt. No. 37-3) ¶ 5; *see also* Thompson Aff. (Dkt. No. 37-2) Exh. F.

The plaintiff, who prior to that time had apparently availed himself of the grievance process while at Upstate, did not file a grievance concerning the incident, nor did he assert any allegations internally, either at Upstate or elsewhere within the DOCS, against any of the named defendants or other officers involved in the relevant events asserting their use of force or participation in a sexual assault.  Defendants' Local Rule 7.1(a)(3) Statement ¶ 6; *see also* Thompson Aff. (Dkt. No. 37-2) Exh. G (Peary Aff.).

---

[3]    The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the special housing unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 n.1 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

[4]    When imposing that penalty the hearing officer explained that the plaintiff, who he described as "a long term SHU inmate who is disruptive", had lost all other available privileges and good time credits.  Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 37-3) ¶ 5; *see also* Thompson Aff. (Dkt. No. 37-2) Exh. F.

II.   <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on June 9, 2003.  Dkt. No. 1.  An amended complaint was later filed by the plaintiff on October 28, 2004, with permission of the court.  Dkt. Nos. 24, 25.   Named in plaintiff's amended complaint as defendants in the action are DOCS Commissioner Glenn S. Goord; Roy A. Girdich, the Superintendent of Upstate at the time of the relevant events; Corrections Sergeant E. Liberty; and Corrections Officers Ted Howard, Mark White, G. Caran, and (f/n/u) Paige.[5]  Following the return of the service acknowledgment forms by five of the seven named defendants, including defendants Howard, Goord, Liberty, White and Caron, an answer was filed on behalf of those defendants on March 3, 2005 generally denying the material allegations of plaintiff's amended complaint and asserting various affirmative defenses including, *inter alia,* plaintiff's failure to exhaust available administrative remedies.  Dkt. No. 31.

On January 30, 2007, the five defendants who have appeared in the action moved seeking the entry of summary judgment.[6]  Dkt. No. 37.  In

---

[5]      According to the defendants, the correct spelling of the individual who was sued by Martin as G. Caran is "Caron."

[6]      Defendants' motion purports to have been filed on behalf of six of the seven named defendants, including former Upstate Superintendent Roy A. Girdich. *See* Dkt. No. 37.  The summons issued in the case was returned on February 23, 2005 as unexecuted as to that defendant, however, *see* Dkt. No. 27, and he is neither

their motion, defendants assert that neither defendant Goord nor defendant Girdich had involvement in the events giving rise to plaintiff's constitutional claims, and consequently there is no basis to find them personally liable for the civil rights deprivations allegedly growing out of the incident.  Defendants further argue that plaintiff's claims are legally deficient based upon his failure to file and pursue to completion a grievance regarding the incident before filing suit.  Despite the fact that defendants' motion was served upon the plaintiff at the last address given by him to the court, and their motion papers included the required notice to *pro se* litigants advising of the consequences of failing to respond to a properly filed summary judgment motion, *see* N.D.N.Y.L.R. 56.2, plaintiff has filed no papers in opposition to defendants' motion, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Dismissal as to Defendants Paige and Girdich Based Upon Plaintiff's Failure to Serve Those Defendants

---

included among the defendants on whose behalves the answer was filed nor has he otherwise appeared in the action.

In their motion defendants point out that despite the issuance on November 3, 2004 of a summons for Corrections Officer Paige, based upon his having been named as a defendant in plaintiff's newly-filed amended complaint, the summons was returned unexecuted as to him on February 23, 2005, and he has neither been served nor otherwise appeared in the action. Defendants now urge dismissal of plaintiff's claims against defendant Paige based upon these circumstances.[7]

Defendants' request for dismissal as against defendant Paige is bottomed upon the requirement, imposed by Rule 4(m) of the Federal Rules of Civil Procedure, that service of a summons occur within 120 days of issuance, absent a court order extending that period.[8] "[W]here good cause is shown, the court has no choice but to extend the time for service,

---

[7]     Although defendants do not also raise this claim in their motion, it appears that their request for dismissal on this basis applies equally to former Upstate Superintendent Roy A. Girdich.

[8]     That rule provides that

> [i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court . . . shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). This court's local rules shorten the time for service from the 120 day period under Rule 4(m) to sixty days. *See* N.D.N.Y.L.R. 4.1(b).

and the inquiry is ended." *Panaras v. Liquid Carbonic Indus. Corp.*, 94

F.3d 338, 340 (7th Cir. 1996). "If, however, good cause does not exist,

the court may, in its discretion, either dismiss the action without prejudice

or direct that service be effected within a specified time." *Id.* (citing Fed.

R. Civ. P. 4(m)); *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir.

2007) ("[D]istrict courts have discretion to grant extensions even in the

absence of good cause."); *Romandette v. Weetabix Co., Inc.*, 807 F.2d

309, 311 (2d Cir. 1986). When examining whether to extend the

prescribed period for service, a district court is afforded ample discretion

to weigh the "overlapping equitable considerations" involved in

determining whether good cause exists and whether an extension may be

granted in the absence of good cause. *See Zapata*, 502 F.3d at 197.

A plaintiff's *pro se* status entitles him or her to a certain degree of

leniency insofar as service of process is concerned; courts generally favor

resolution of a case on its merits rather than on the basis of a procedural

technicality. *Poulakis v. Amtrak*, 139 F.R.D. 107, 109 (N.D. Ill. 1991).

When a plaintiff proceeds *in forma pauperis*, such as is the case in this

instance, the court is obligated to issue the plaintiff's process to the United

States Marshal, who must in turn effect service upon the defendants,

thereby relieving the plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint.  *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). That does not mean, however, that a *pro se* plaintiff may stand idly by upon being notified that efforts by the U.S. Marshals Service to serve a particular defendant have been unsuccessful.  *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938-43 (E.D. Mich. 2004).  In such an instance it is incumbent upon the plaintiff to develop, though pretrial discovery or otherwise, any additional information necessary to permit service by the United States Marshals Service.  *See VanDiver*, 304 F. Supp. 2d at 942.

     In this case neither defendant Paige, who is the subject of defendants' motion, nor defendant Girdich has been served or otherwise appeared in the action within the appropriate time period.  Based upon a review of the record I am unable to find good cause justifying plaintiff's failure to effectuate timely service, and find no sufficient basis presented to exercise my discretion in favor of extending the governing period of service.  Accordingly, since this court has never acquired jurisdiction over the two, plaintiff's complaint should be dismissed as against defendants Paige and Girdich, without prejudice.  *See, e.g., Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F. Supp. 1279, 1282 (S.D.N.Y.

11

1989) (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45, 66 S. Ct. 242, 245-46 (1946)) (court lacks jurisdiction until defendants properly served with summons and complaint).

     B.    <u>Plaintiff's Failure to Oppose Defendants' Motion</u>

An issue to be addressed before turning to the more substantive portion of defendants' application is the legal significance, if any, of plaintiff's failure to oppose defendants' summary judgment motion, and specifically whether that failure automatically entitles defendants to dismissal of plaintiff's complaint, based upon their motion.

This court's rules provide that

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3).  While recognizing that *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, *see Jemzura v. Public Serv. Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.)), courts in this district have nonetheless found it appropriate to grant dispositive motions pursuant to Local Rule 7.1(b)(3) based upon a *pro se* plaintiff's failure to respond.  *Robinson v. Delgado*,

96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski*, 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980 F. Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.). As can be seen by the face of Local Rule 7.1(b)(3), however, before summary judgment can be granted based upon a party's motion – even in the absence of opposition – the court must review the motion to determine whether it is facially meritorious. *See Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 231-32 (N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences. By opting not to submit papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged. Courts in this district have not hesitated to enforce Local Rule 7.1(a)(3) and its predecessor, Local Rule 7.1(f), by deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure

13

to properly respond to that statement.[9]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).  I recommend that when reviewing defendants' motion for facial sufficiency the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement.

C.    Failure to Exhaust

In their motion, the five defendants who have appeared in the action seek dismissal of plaintiff's claims based upon his failure to satisfy his legal obligation to exhaust available administrative remedies, or to affirmatively establish a basis for excusing that requirement, before commencing suit.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]"  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct.

_____

[9]    Local Rule 7.1(a)(3) provides that "any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3).

14

983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* __ U.S. __, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record."  *Jones v. Bock,* __ U.S. __, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 126 S. Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 127 S. Ct. at 918.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA.  *Macias*, 495

16

F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement. *Macias*, 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004). Under the prescribed algorythm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions, by preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense. *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable

17

administrative procedural requirements.[10]  *Macias*, 495 F.3d at 41;

*Hemphill*, 380 F.3d at 686.

> ### 1.   Availability of Remedy

New York prison inmates are subject to an Inmate Grievance

Program ("IGP") established by the Department of Correctional Services

("DOCS"), and recognized as an "available" remedy for purposes of the

PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4

(S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir.

2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The

IGP consists of a three-step review process.  First, a written grievance is

submitted to the Inmate Grievance Review Committee ("IGRC") within

twenty-one days of the incident.[11]  7 N.Y.C.R.R. § 701.5(a).  The IGRC,

which is comprised of inmates and facility employees, then issues a

determination regarding the grievance.  *Id.* §§ 701.4(b), 701.5(b).  If an

appeal is filed, the superintendent of the facility next reviews the IGRC's

determination and issues a decision.  *Id.* § 701.5(c).  The third level of the

---

[10]      In practicality these three prongs of the prescribed test, though intellectually distinct, plainly admit of significant overlap.  *See Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8 n.14 (E.D.N.Y. Jan. 31, 2007); *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

[11]      The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

process affords the inmate the right to appeal the superintendent's ruling

to the Central Office Review Committee ("CORC"), which makes the final

administrative decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a

basis to excuse non-compliance with this prescribed process, only upon

exhaustion of these three levels of review may a prisoner seek relief

pursuant to section 1983 in a federal court.[12]  *Reyes v. Punzal*, 206 F.

Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*,

No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Despite an inmate's entitlement under most circumstances to file

and pursue a grievance in accordance with the IGP, there are

circumstances under which the grievance procedure nonetheless is

deemed not to have been available to an inmate plaintiff.  *See Hemphill*,

380 F.3d at 687-88.  Thus, for example, "[e]xhaustion may be considered

unavailable in situations where plaintiff is unaware of the grievance

procedures or did not understand it, . . . or where defendants' behavior

prevents plaintiff from seeking administrative remedies."  *Hargrove,* 2007

WL 389003, at *8 (citations omitted) (noting, for example, that a

---

[12]     The controlling DOCS Directives provisions outline special procedures for complaining of harassment at the hands of corrections workers.  *See* DOCS Directive No. 4040, § 701.8.  Under the prescribed process such claims ordinarily by-pass the IGRC step and proceed directly to review by the appropriate facility superintendent of his or her designee.  *Id.*

defendant's failure to advance plaintiff's grievances or the issuance of threats against an inmate to deter the filing of a grievance may effectively render the administrative process unavailable).  When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available."  *Id.* at 688 (internal quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at *8.

From a review of the record before the court it appears that the claims now being raised by the plaintiff constitute grievable controversies as defined under the IGP.  Plaintiff has asserted no basis to conclude that he misunderstood the grievance process or that through their actions the defendants improperly deterred his filing of a grievance, and the record discloses no basis for such a finding.  Accordingly, I conclude that there was an administrative remedy available to the plaintiff in this case at the times relative to his claims.

2.    Presentation of Defense/Estoppel

The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-

exhaustion by failing to raise or preserve it, or whether the defendants'
own actions inhibiting the inmate's exhaustion of remedies may estop one
or more of the defendants from raising the plaintiff's failure to exhaust as a
defense." *Hemphill,* 380 F.3d at 686 (citations omitted).  In this instance
defendants' answer includes, as an affirmative defense, the allegation that
"[p]laintiff has failed to exhaust administrative remedies."  Answer (Dkt.
No. 31) ¶ 38.  Accordingly, because defendants have properly preserved
the affirmative defense of failure to exhaust, and the scant record now
before the court discloses no basis to find that by their actions the
defendants have forfeited the defense, I conclude this prong of the
tripartite analysis provides no basis to excuse plaintiff's failure to exhaust
in this instance.

### 3.    Special Circumstances

The third, catchall factor to be considered under the Second Circuit's
prescribed exhaustion rubric focuses upon whether special circumstances
have been plausibly alleged which, if demonstrated, would justify excusing
a plaintiff's failure to exhaust administrative remedies.  *Hemphill,* 380 F.3d
at 689; *see also Giano v. Goord,* 380 F.3d 670, 676-77 (2d Cir. 2004);
*Hargrove,* 2007 WL 389003, at *10.  Among the circumstances potentially
qualifying as "special" under this prong of the test include where a

plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable.  *Giano*, 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano*).

In this instance the defendants have convincingly established plaintiff's failure to file a grievance or otherwise complain regarding the assault which, he contends, was perpetrated by prison officials in March of 2003.  Similarly, plaintiff's complaint discloses no basis to excuse the requirement of exhaustion, and the record contains no other basis for the court to overlook this meaningful requirement.  Accordingly, I recommend dismissal of plaintiff's complaint, based upon his failure to exhaust available administrative remedies.  *See Hargrove*, 2007 WL 389003, at *10 (indicating that plaintiff's complaint was subject to dismissal because, *inter alia*, he failed to allege any special circumstances justifying his failure to exhaust administrative remedies); *see also Baez v. Kahanowicz*, 469 F. Supp. 2d 171, 179 (S.D.N.Y. 2007) (same).

The next question to be addressed is whether the dismissal of plaintiff's complaint on this procedural basis should be with or without prejudice, particularly in view of his release from prison.  The Second Circuit has observed that where a plaintiff is released from prison during

22

the pendency of an action, if the plaintiff had "ample opportunity" to exhaust administrative remedies prior to his or her release, unexhausted claims may be dismissed with prejudice in light of that failure to exhaust. *See Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003).

The events that gave rise to Martin's claims occurred in March of 2003.  Plaintiff was not released from prison until November of 2004.  *See* Dkt. No. 26.  Plaintiff therefore had well over one year to exhaust the administrative remedies available to him while in prison, a period which is more than adequate under the reasoning of *Berry* and the circumstances of this case.  Indeed, now that plaintiff has been released, the IGP is no longer available to him to address his grievances, and in any event, he had ample time to utilize that program while he was incarcerated.  *See Liner v. Goord*, 115 F. Supp. 2d 432, 434 (S.D.N.Y. 2000) (determining that administrative remedies were no longer available to plaintiff who had been released from prison because IGP procedures are available only to inmates and visitors, not to former inmates).  Accordingly, in view of plaintiff's apparent release from prison and, as a consequence, the unavailability of the IGP to the plaintiff, as well as the amount of time which he had to exhaust his grievances while incarcerated, I recommend that the dismissal be with prejudice.

IV.   SUMMARY AND RECOMMENDATION

Before commencing this action, in which plaintiff complains of the alleged use by various prison officials of excessive force towards him, plaintiff failed to file and pursue to completion a grievance regarding the matter.  Based upon this failure and the lack of any showing of a legally sufficient basis for excusing plaintiff's non-compliance with this meaningful requirement, imposed under the PLRA, plaintiff's claims against the five defendants appearing in the action are subject to dismissal.[13] Moreover, in light of plaintiff's subsequent release from DOCS custody and his resulting inability to satisfy the exhaustion requirement, the dismissal of his claims on this basis should be with prejudice.  Additionally, based upon plaintiff's failure to effectuate service in a timely fashion, his claims against the two unserved defendants in the action, including former Superintendent Girdich and Corrections Officer Paige, are subject to dismissal, though without prejudice, on this separate and independent basis.  Based upon the foregoing it is therefore hereby

---

[13]     In light of this recommendation I have found it unnecessary to address the separate, independent request by Commissioner Goord seeking dismissal of plaintiff's claims against him based upon the lack of his personal involvement in the conduct giving rise to plaintiff's constitutional claims.  Although this ground is also asserted on behalf of defendant Girdich, as was previously noted he is not currently a party to this action.

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 37) be GRANTED and plaintiff's complaint in this action be dismissed as against defendants Howard, White, Liberty, Caron, and Goord, with prejudice, based upon his failure to exhaust available administrative remedies, and further that plaintiff's claims as against defendants Girdich and Paige be dismissed, without prejudice, based upon plaintiff's failure to serve those defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     January 2, 2008
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

25